# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 16-cv-10848 |
| ) | |
| v. ) | Judge Sara L. Ellis |
| ) | |
| VILLAGE OF TINLEY PARK, ILLINOIS, ) | Magistrate Judge Michael T. Mason |
| ) | |
| Defendant. ) | |

## Defendant's Motion for a Protective Order

### Introduction

The United States government's (the "Government") campaign of harassment against the Village of Tinley Park and its current and former Village officials must stop. First, Government officials have instituted a lawsuit against the Village without proper authority. Now the Government has overstepped all boundaries, and is attempting to refuse former Tinley Park Village officials their right to their chosen legal representation. The Village and those officials are now forced to seek redress from this Court.

On May 4, 2017, attorneys for the Government sent a letter to David G. Seaman ("Seaman"), the mayor of the Village until May 1, 2017, that stated: "We understand that you are no longer mayor of the Village and **therefore no longer represented by the Village's attorneys**." Letter (M. Kelly to D. Seaman) (May 4, 2017) (Exhibit A) (emphasis added)[1]. After incorrectly stating Seaman was not represented, the letter requested a meeting to discuss the underlying facts of this case, and attached a subpoena for documents.

---

[1] The Government also sent similar letters to three former Trustees.

As an initial note, the Government had no basis for stating that the Village attorneys (the "Firm") were no longer representing Seaman. In fact, if there was a question regarding that point, the attorneys for the Government could have picked up the phone and contacted the Firm to inquire regarding the same. But even if such a question did arise in the minds of the Government attorneys due to Seaman leaving office, and those attorneys felt they were not required to inquire with the Firm regarding such representation, at the very least the Government's letter and subpoena to Seaman and the other former trustees[2] (collectively "Subpoena Recipients") should have been posed as a question – Are you still being represented by the Firm? Instead, it attempted to try and scare the former Village official into believing that the Village was no longer providing representation for Subpoena Recipients.

After learning of the letter to Mr. Seaman, and the other Subpoena Recipients, the undersigned counsel e-mailed counsel for the Government to inform the Government that (1) that the May 4, 2017 letters were improper and (2) to take away all doubt and let the Government attorneys know that the Firm is representing the Subpoena Recipients individually. Rather than acknowledge that the letter to the Subpoena Recipients was at best, poorly worded, the Government decided to double down on its baseless position, and responded that it would not acknowledge that the Subpoena Recipients were being represented by the Firm, and that the Government would only acknowledge such representation if a signed engagement agreement between the Firm and the Subpoena Recipients was turned over to the Government.

The Firm attorneys informed the Government attorneys, in writing, and orally via a phone conference, that the Government is not entitled to see an engagement agreement, and that

---

[2] Subpoenas also went out to former trustees Maher, Grady, Brady and Suggs and former mayors Seaman and Zabrocki. This firm represents everyone except former trustee Brady, who is being represented by his personal attorney, Robert Slobig.

the Government is being put on notice, by an attorney who is an officer of this Court, that the Firm represents the Subpoena Recipients individually as well as the Village. Such a statement is sufficient to put the Government on notice of the representation, and as a result the Government's attorneys needed to cease all direct communications with the Subpoena Recipients.

Rather than acknowledge the error in their actions, and apologize for the same, the Government attorneys' response was that they would not accept that the Subpoena Recipients were being represented by the Firm, and that the government would continue to make attempts to directly contact the Subpoena Recipients until a signed engagement letter was provided to them. A copy of the correspondence between attorneys for the Government and the Firm are attached as Exhibit B.

The Village and its former officials seek intervention from this Court, and ask that the Court enter a protective order which states as follows:

(1) Prohibit the United States Government from attempting to directly contact or communicate with the Subpoena Recipients;

(2) Prohibit the United States Government from contacting any other former Village officials or employees without first contacting the undersigned attorneys in writing to determine whether those officials or employees are represented by the undersigned attorneys; and

(3) Staying any potential production of documents pursuant to any third-party subpoenas until after the Court's ruling on the Village's Motion to Dismiss on July 17, 2018.

**Factual Background**

On June 16, 2016, the Government notified the Village that it initiated an investigation into the zoning and land use practices of the Village, pursuant to the Fair Housing Act. Letter from S. Shina Majeed to A. McGrath (June 16, 2016) (Exhibit C). As part of this pre-suit investigation, the Government requested certain documents and information from the Village. *Id.* at Attachment A. In response to this request for documents and information, the Village voluntarily produced over 25,000 pages of documents to the Government. While the Village was cooperating with the Government's investigation, the Village, through its attorneys, made a request to the Government – that after the Government had gone through its initial investigation the Government would allow the Village an opportunity to sit down with the Government and explain its side of the events that were under investigation. The Government assured the Village that it would be afforded such an opportunity.

Despite the cooperation by the Village, and despite the Government's promise to sit down with the Village prior to taking any action, on November 4, 2016, with no warning and without the promised meeting taking place, the Government sent the Village a demand letter stating it needed to enter into a consent decree within two weeks or a lawsuit would be filed against the Village. According to the proposed consent decree, the Village would have to admit that it has a long history of engaging in racist and discriminatory acts. Since the Village had done nothing wrong, the Village declined to enter into such a decree.

On November 23, 2016, after President Trump had been elected as the next president of the United States, but prior to him taking office, the Government ran to the court house and filed its Complaint against the Village for alleged violations of the Fair Housing Act in delaying

4

and/or blocking a low-income housing development proposed to be built in the Village called The Reserve. Dkt. No. 1.

On January 24, 2017, the Village filed its motion to dismiss the complaint in this case because the United States lacks standing ("Motion to Dismiss"). Dkt. No. 12. The Court set a status date of July 18, 2017 for ruling on the Motion to Dismiss. Dkt. No. 15.

On May 4, 2017, the Government issued several subpoenas to both former and current elected officials of Tinley Park. The Government also sent subpoenas to various other third parties, including: (1) former planning director Amy Connolly; (2) the Cook County Sheriff, Office of Inspector General; and (3) a Facebook group called Concerned Citizens for Tinley Park. Copies of these subpoenas are attached as Group Exhibit D.

## Argument

**I.    The Court should enter a protective order to prohibit the Government or its counsel from contacting the Subpoena Recipients.**

"In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." ABA Model Rules of Professional Conduct Rule 4.2. Pursuant to Comment 8 of Rule 4.2: "The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. See Rule 1.0(f). Thus, *the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious*." (emphasis added). This prohibition extends beyond parties to include non-party witnesses as well. *See Parker v. Pepsi-Cola General Bottlers, Inc.*, 249 F. Supp. 2d 1006 (N.D.

5

Ill. 2003) (finding that counsel violated Rule 4.2 when it took the deposition of a witness in an employment discrimination matter knowing that the witness was represented by counsel in a separate lawsuit against the same defendant and failed to notify the witness's attorney). In *Parker*, the Court took particular offense not only to counsel's conduct, but also to counsel's refusal to recognize its conduct was inappropriate and offering of "flimsy, unsupported defenses in such a contumacious manner." *Id.* at 1014, n.2.

    As discussed above, the Government and its attorneys attempt to do what is specifically prohibited by the Rules of Professional Conduct – they attempt to close their eyes to the obvious. The undersigned counsel has stated on numerous occasions that they represent the Subpoena Recipients. Yet counsel for the Government refuses to accept this fact and refuses to agree that they will stop communicating with these represented individuals. Instead, they have inexplicably requested copies of engagement agreements between the Firm and the Subpoena Recipients to confirm that these individuals are represented by the Firm. This is improper, as the Government's counsel does not have the right to know the terms of the engagement between the Firm and the Subpoena Recipients because such information is not relevant to any claim or defense in the case. *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164 MLBDWB, 2007 WL 2122440, at *5 (D. Kan. July 20, 2007) (denying a motion to compel production of engagement letters because they were "not facially relevant to any claim or defense in the case and do not appear likely to lead to discovery of admissible evidence" and pointing out that "[b]ecause the engagements letters do not appear relevant on their face, [the requesting party has] the burden of showing the relevancy of the request"); *Hawkins v. Medapproach Holdings, Inc.,* No. 13CV5434 (ALC) (DF), 2014 WL 11350177, at *3 (S.D.N.Y.

June 27, 2014) ("[p]laintiff has not shown the relevance of documents requested by Request No. 10, which calls for engagement letters and invoices pertaining to the non-parties' legal work").

Accordingly, the Court should enter a protective order that prohibits the Government from (1) continuing to contact or communicate with former Village officials who counsel for the Village told the Government are represented by the undersigned counsel; (2) contacting any other former Village employees and/or officials before first confirming with the Firm whether those individuals are also represented by the Firm.

II. **The Court should enter a protective order to staying production under any third- party subpoenas until the Court has ruled on the Village's Motion to Dismiss.**

As this Court is aware, there is a Motion to Dismiss pending before the Court. Consequently, the Village requested that the Court stay discovery for the next 8 weeks, until the Court has an opportunity to address the Village's motion on July 18th. Given the length of time until its ruling, the Court declined to stay discovery.

As mentioned above, the Village already has provided 25,000 pages of documents pursuant to the Government's requests. The Village has made 26(a)(1) disclosures, and within the next week will produce its 26(a)(1) documents, which likely will be over 25,000 pages of documents. After this production, the Village's attorneys will then needs to turn its attention to the Government's newest document request, which will likely generate 100s of thousands of pages of documents, and will take 4-6 weeks for the Village's attorneys to get through and produce. On top of all of the above, now the Government has launched a subpoena offensive, with eleven subpoenas being issued within the last two weeks.

Unfortunately for the Government, it realizes its case is likely to be dismissed, and the current Acting Assistant Attorney General for the Civil Rights Division, Thomas Wheeler, and

7

current U.S. attorney, Jeff Sessions, will not authorize the filing an amended complaint. In a desperate attempt to shake the discovery trees, the Government attorneys are launching an all-out discovery offensive against the Village in the hope that something will materialize to justify their actions to date. The problem is that no such information exists, and the only thing the Government's offensive is doing is causing the Village to incur undue expenses via attorney's fees.

The Village is not suggesting that the Government be precluded from conducting any discovery; it understands this Court's ruling that discovery should proceed, and will continue to work diligently to provide information and documents. However, the Government's onslaught of subpoenas, especially given the amount of information that the Government is already requesting, is inappropriate – especially considering the Government has not even made it past the motion to dismiss phase. Considering the Village's counsel will need to review all documents that need to be produced pursuant to the majority of the issued subpoenas, the Village believes that it is fair that the work that will go into such productions be delayed until the Court determines that the Village has a valid complaint.

WHEREFORE, based on the above, the Village requests that the Court enter a protective order which states as follows:

(1) Prohibit the United States Government from attempting to directly contact or communicate with the Subpoena Recipients;

(2) Prohibit the United States Government from contacting any other former Village officials or employees without first contacting the undersigned attorneys in writing to determine whether those officials or employees are represented by the undersigned attorneys; and

(3) Staying any potential production of documents pursuant to any third-party subpoenas until after the Court's ruling on the Village's Motion to Dismiss on July 17, 2018.

Respectfully submitted,

Village of Tinley Park, Illinois

By: /s/ Alastar S. McGrath
One of its attorneys

Paul J. Kozacky
Alastar S. McGrath
Jerome R. Weitzel
Larry J. Lipka
KOZACKY WEITZEL McGRATH, P.C.
55 West Monroe, 24th Floor
Chicago, IL 60603
(312) 696-0900

9