# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VILLAGE OF TINLEY PARK, ILLINOIS, )<br>)<br>Defendant. )<br>) | No. 16 CV 10848<br><br>Judge Sara L. Ellis |

**STIPULATION AND ORDER REGARDING DISCOVERY**

Plaintiff United States and Defendant Village of Tinley Park, Illinois ("Tinley Park") mutually seek to reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI"). Therefore, the Parties are entering into this Stipulation to govern discovery obligations in this action.

The Parties stipulate to the following:

**I.    Definitions**

a.    "Backup system" means backup tapes, continuity of operations systems, data or system mirrors or shadows, and other systems that are: i) used for the purpose of system recovery or information restoration; and ii) routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established, documented, and routine system maintenance policy.

b.    "Black and white image" means a paper or electronic document that is scanned or converted to single page Tagged Image File Format ("TIFF") using CCITT Group IC

2

compression at 300 d.p.i. and that reflects the full and complete information contained in the original document.

c. "Color image" means photographs, color brochures, or other documents that are scanned or converted to JPEG files using a high quality setting and that reflect the full and complete information contained in the original document. Color images will only be produced where requested.

d. "Document family" means a group of related documents, including paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc., emails with attachments, archive files such as zip, and files with embedded documents.

e. "Draft document" means a preliminary version of a document that is: i) shared by the author with another person; or ii) not shared by the author with another person and that the author no longer intends to finalize.

f. "Effective date" means the date that all of the Parties execute this Stipulation.

g. "Extracted text" means searchable text extracted from native files (*e.g.*, spreadsheets and presentations) that is in ASCII format with all pages of the document represented on one file.

h. "Image cross reference file" means a file in Relativity Opticon.log format that contains Bates Numbers, paths to images, and document break indicators for all ESI in each production.

i. "Load file" means a file in Relativity.DAT file format with standard delimiters that contains all the metadata fields required for each production.

j. "Metadata fields" means the following field names and definitions for electronic documents and email:

| Field Name | Definition |
| --- | --- |
| Begin Bates | Bates number for the first page of a TIFF or JPEG image or the Baes number of the placeholder page for a native document. |
| End Bates | Bates number for the last page of a TIFF or JPEG image or the Bates number of the placeholder page for a native document. |
| Attachment Range | Only for document families, provide Bates range starting with the first page of the parent document through the last page of the last attachment or embedded file. Leave this field blank if there is no document family. |
| Custodian | The name of the person who had primary control over the location from which the document was collected. |
| From | "From" field in email. |
| To | "To" field in email. |
| CC | "CC" field in email. |
| BCC | "BCC" field in email. |
| Subject | "Subject" field in email. |
| Date Sent | Date and time fields in email (format; 9/28/2012 11:16:46 AM). |
| MD5Hash | The MD5 hash value calculated when the file was collected or processed. |
| Orig_File Path | Path to location from which original file was collected. |
| Prod_File Path | The path to the native file on the production media. |
| Native_filename | Original name of the native file when the file was collected or processed. |
| File Path | Derived from source data, this lists the directory path to the native when applicable. This metadata is not always available. |
| INTMSGID | MS Office-generated value, used for email threading in review databases. |
| OCR Path | Vendor-generated value, links text files to documents in deliverable load files |
| Native Link | Vendor-generated value, links native files to documents in deliverable load files |

4

k.  "Not reasonably accessible" means ESI from a source(s) that a party identifies as not reasonably accessible because of undue burden or cost.

l.  "Optical Character Recognition ("OCR")" means searchable text generated for scanned hard-copy documents or native files that is in ASCII format with all pages of the document represented in one file.

m.  "Party" means the United States Department of Justice ("United States") and Village of Tinley Park ("Tinley Park").

n.  "Production media" means a CD-ROM, DVD, external hard drive, or other agreed-upon physical media.

o.  "Retention policy" means a policy established by a Party's official decision-making authority responsible for the retention of documents, things, and ESI that results in the routine preservation of any of the categories of information identified in this Stipulation and Order.

p.  "Web page" means any internet and intranet pages including, but not limited to, pages on social media and social networking sites, blogs, or other sites, to which a Party has posted relevant information.

**II.  Obligation to Preserve**

In accordance with the Federal Rules of Civil Procedure ("FRCP"), the Federal Rules of Evidence ("FRE"), and the relevant controlling principles of law, the Parties agree to preserve relevant documents, things, and ESI, created before or after the Effective Date of this Stipulation and Order.  The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

5

**III.  Limitations on Obligation to Preserve**

The Parties agree to limit the scope of preservation as described in this section.

a.  The Parties agree not to preserve the following categories of ESI: i) voicemail messages on voicemail systems of attorneys and staff of Department of Justice or Kozacky Weitzel McGrath, P.C.; ii) delivery or read receipts of email; iii) logs of calls made to or from mobile devices belonging to attorneys or staff of Department of Justice or Kozacky Weitzel McGrath, P.C.; iv) temporary or cache files, including internet history, web browser cache and cookie files, wherever located; v) server, system, or network logs; vi) data from photocopiers or fax machines; and vii) auto-saved copies of electronic documents.

b.  When duplicate copies of relevant ESI exist in more than one location, no party is required to preserve: i) ESI on mobile or portable devices (*e.g.*, Blackberry Handheld, smart phones, thumb drives, CDs, DVDs, etc.), including documents, electronic messages (*e.g.*, email SMS, "pin to pin," etc.), calendar entries, contact data or notes, *provided that* duplicate copies of the ESI are preserved in another reasonably accessible location; ii) duplicate copies of email or other electronic messages sent to multiple recipients *provided that* duplicate copies of the ESI have been preserved in another reasonably accessible location.  If relevant ESI exists *only* on a Party's Backup System, the Party will preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced.  If the Parties cannot reach agreement, they will seek a ruling from the Court.

c.  The Parties agree not to preserve relevant documents, things, or ESI created by, and exchanged: i) *solely among* attorneys or staff within the United States Department of

6

Justice; ii) *solely among* attorneys or staff of Kozacky Weitzel McGrath, P.C.; iii) *solely between* attorneys and staff of the United States Department of Justice and attorneys for the United States Department of Housing and Urban Development; or iv) *solely between* attorneys or staff of Kozacky Weitzel McGrath, P.C. and attorneys and staff of Peterson Johnson & Murray, S.C.

d. The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to paragraphs 3a-c, above. If any discovery request appears to call for the production of documents, things, or ESI covered by paragraphs 3a-c, the responding Party is not required to produce or identify such information on a privilege log. However, if a Party preserves relevant documents, things, or ESI covered by paragraphs 3a-c, in order to support a claim or defense in this case, the Party shall produce such information or identify it on a privilege log notwithstanding the provisions of paragraphs 3a-c, above.

**IV. Identification & Production of Documents, Things, and ESI**

a. <u>Use of Search Criteria to Identify ESI</u>: The Village believes that the use of search criteria or analytic tools should be used to identify responsive ESI. The Parties will meet and confer to discuss the search criteria for ESI production(s).

b. <u>Production Specifications</u>: The Parties agree to produce documents, things, and ESI as follows:

    i. <u>Word Processing Files and PDFs</u> will be produced as Black & White Images with Extracted Text. If word processing files contained redlines or markups, the Parties agree to produce Black & White Images with Extracted Text showing the marked up or redlines image.

7

ii. <u>Email</u> will be produced as Black & White Images with Extracted Text.

iii. <u>Spreadsheets</u> (*e.g.*, Excel or Quattropro) will be produced in native format with Extracted Text and a placeholder image.

iv. <u>Presentations</u> (*e.g.*, Powerpoint) will be produced in native format with Extracted Text and a placeholder image.

v. <u>Photographs</u> will be produced as Color Images, where requested.

vi. <u>Web Pages</u> will include the responsive text, photos, videos, and other relevant content, and the date the content was posted or edited. The Parties will produce responsive content in a readily accessible format (*e.g.*, Microsoft Word, PDF, etc.).

vii. <u>Audio & Video</u> the Parties will meet and confer regarding the production of video, audio, and any proprietary file formats (*i.e.*, non-Microsoft or Corel Suite compatible files).

viii. <u>Databases</u> the Parties will meet and confer regarding the production of information from databases.

ix. <u>Deduplication</u> will be used to remove exact duplicate documents for each custodian from the collection. The Parties agree to use MD-5 hash values for deduplication and calculate those values for all ESI at the time of collection or processing.

x. <u>Document families</u> will be processed so that each part of a document family is a separate document.

xi. <u>Metadata fields for word processing files, PDFs, spreadsheets, presentations, and digital photographs</u> will include all of the following:

     Begin_Bates, End_Bates, AttachmentRange (only for document families),

     Custodian, MD5Hash, Prod_FilePath, Native_filename.

  xii.  <u>Metadata fields for email</u> will include all of the following: Begin_Bates, End_Bates, AttachmentRange (only for document families) Custodian, From, To, CC, BCC, Subject, DateSent, MD5Hash, Prod_FilePath, Native_filename.

  xiii.  ESI not specifically discussed elsewhere will be produced as image files with extracted text and metadata (to the extent it exists). If other ESI cannot be converted to an image, the Parties will promptly meet and confer about the form of production.

c. <u>Form of Production for Paper Documents</u>: The Parties agree to scan hard-copy documents as Black & White or Color Images. The Parties agree to use Color Images only where color is necessary to understand or use the information contained in the image (*e.g.*, redlines, color-coded graphs or charts, printed photographs, etc.) and only where requested.

 To the extent possible and on an on-going basis, the Parties agree to produce paper documents in a manner that accurately represents the organization of the original paper document. Each page of a hard copy document will be scanned as an image. If a document has multiple pages, the scanned images of each page will be produced in the order maintained in the original document. For documents that contain fixed notes, (*e.g.*, post-it notes), the pages will be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Scanned documents will

be produced with an Attachment Range that enables the receiving party to electronically reconstitute the parent-child relationship among the scanned documents.

d. <u>Bates Numbering</u>: The Parties agree to label all documents and images using Bates Numbers in the format "XX########" where "XX" represents the short character abbreviation for the producing party (*i.e.*, US for United States; Tinley for Defendant) and "########" represents the eight-digit sequential number of the page being produced. For each image, the Parties agree to electronically "burn" a legible, unique Bates Number onto the lower right hand corner of each page or at a location that does not obliterate, conceal, or interfere with any information in the image. The Parties will name image files [Bates Number].tif or [Bates Number].jpg. For native files, the Parties agree not to place Bates Numbers on each page, but to name each native file [Bates Number].ext.

The Parties will sequentially Bates Number each document in a document family and will provide an attachment range for all parent and child documents as a way of identifying the document family.

e. If a Party needs to redact a portion of a document for which only a native file is produced, (*e.g.*, Excel and PowerPoint), the Parties will meet and confer regarding production of the redacted document.

f. The parties agree to remove encryption or password protection for all ESI produced. In the alternative, the parties agree to provide passwords or assistance needed to open encrypted documents.

g. In order to enable each Party to import productions into its own review databases, (i.e., Relativity), the Parties agree to organize productions as follows:

      i.      All images (i.e., TIFF, JPEG) will be produced in a directory labeled IMAGES. Each party will include placeholder images for any ESI produced in native format.

      ii.     All native files (with the proper Windows associated extension) will be produced in a directory labeled NATIVE.

      iii.    An image cross reference file and a load file containing all required metadata fields will be produced in a directory labeled DATA.

      iv.    All extracted text and OCR will be produced in a directory labeled TEXT. The Parties agree to provide a text file for all ESI, even if the size of the file is zero.

h. Parties will use Production Media most appropriate to the size of the production. Parties agree to label each piece of Production Media with: i) case number, ii) producing party's name; iii) production date; iv) production "wave" and volume (e.g., 001.001 for wave 1, volume 1, 002.001 for wave 2, volume 1, etc.). In addition, the Parties will include on the production media label or in an accompanying letter the type of materials (*e.g.*, documents, OCR text, etc.) and the Bates Number range(s) of the materials on the Production Media.

i. The Parties agree not to produce documents, things, or ESI using FTP, SFTP, hosted or commercially available services (*e.g.*, Dropbox.com) without written agreement of all Parties.

V. **Privileged Documents, Things, and ESI**

    a. <u>Assertion of Privilege/Protection</u>: The Parties agree that for each document, thing, or ESI withheld based on an asserted claim of privilege or protection, the asserting

Party must produce a log pursuant to FRCP 26(b)(5)(a), except as provided in subparagraph 3.d., above. The Parties agree they need not produce or describe on a privilege log communications between a Party's attorney and any witness required to provide a report under FRCP 26(a)(2)(B), except that the Parties will disclose communications made discoverable by FRCP 26(b)(4)(C).

Except as otherwise provided in paragraphs III and V, nothing in this Stipulation and Order shall alter the responsibilities or obligation of the Parties to provide a privilege log for material withheld under a claim of privilege or protection.

b.  <u>Inadvertent Disclosure of Privileged or Protected Information</u>:  The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, work product protection, or governmental privileges does not operate as a waiver in this case if:  i) the disclosure is inadvertent; ii) the holder of the privilege or protection took reasonable steps to prevent disclosure; and iii) the holder promptly took reasonable steps to rectify the error.

If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving party within 5 days of discovery of disclosure and provide the production date, wave number, and volume of the production media, inadvertently produced.  Within 14 days after sending notification, the producing Party may make a written request for return of the material.  If the producing Party does not send a written request for return of the material to the receiving Party within 14 days of sending notice, the producing Party waives all claims of privilege or protection as to the material.

When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing Party. If copies of inadvertently produced materials are captured on the receiving Party's Backup System, the receiving Party will overwrite those copies according to its established procedures.

If the receiving Party must destroy or delete production media (*e.g.*, CD) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

If the receiving Party intends to challenge the claim of privilege or protection or inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court.

## VI. Duty to Supplement Discovery Requests

Each Party must supplement or correct its disclosure or response in compliance with FRCP 26(e).

## VII. Sanctions

Each Party agrees not to seek sanctions pursuant to the FRCP, the contempt powers of the Court, or any other authority, against another Party for the failure to preserve documents, things, or ESI that are not required to be maintained pursuant to Paragraph 3.

## VIII. Miscellaneous

    a.    The Stipulation may be executed in counterparts.

  b. This Stipulation may not be enlarged, modified or altered except in a writing signed by each Party.

  c. The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters not addressed herein.

Agreed to by counsel for the Parties:

For the United States:

/s/ Amie S. Murphy    Date: July 11, 2017

For the Defendant:

/s/ Jerome R. Weitzel    Date: July 17, 2017


So ORDERED:

Date:_____  _____

14